UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

EARL JONES,

              Plaintiff,              Case No. 1:17-cv-324

v.                                       Honorable Paul L. Maloney

 UNKNOWN CLINE et al.,

              Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Earl Jones is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility in Kincheloe, Michigan. The events of which he complains, however, occurred while he was incarcerated at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan. Plaintiff sues LCF Assistant Resident Unit Manager Unknown Cline, LCF Lieutenant Unknown Chrisman, and LCF prison guard Unknown Jennett. Each Defendant is sued in his individual and official capacity.

Plaintiff alleges that these Defendants violated Plaintiff's constitutional rights during a period beginning January 3, 2016 and ending with Plaintiff's transfer to Kinross on March 31, 2016. Plaintiff's description of the events giving rise to his complaint is sketchy, at best.

On January 3, 2016, Plaintiff was in the Control Center for review of a misconduct ticket relating to his receipt of funds from an unknown source. (Compl., ECF No. 1, PageID.3.) Plaintiff alleges that Defendant Chrisman became incensed during the review and stormed out claiming that Plaintiff was lying. (*Id*.) Plaintiff alleges that he wrote a formal complaint to the warden on January 4, expressing Plaintiff's concern that Defendant Chrisman intended to harass Plaintiff because of Plaintiff's attempt to challenge the misconduct ticket. (*Id*.)

Plaintiff acknowledges that, at the time of the misconduct review, he did not know where the money came from, but he eventually learned that the family of another prisoner had sent the money. (*Id*.) Accordingly, two weeks later, Plaintiff pleaded guilty to the misconduct. (*Id*.) At that time, he attempted to apologize to Defendant Chrisman, but Chrisman told Plaintiff to get away from him and that Plaintiff would be taught a lesson. (*Id*.) Plaintiff again drafted a complaint to the warden regarding Chrisman's conduct. (*Id*., PageID.4.)

Thereafter, Plaintiff was moved to another unit, a unit Plaintiff describes as "the worst unit on the compound" and a unit for trouble makers. (*Id*., PageID.4, 11.) As a result of the move, Plaintiff lost his prison job. (*Id*., PageID.4.) When Plaintiff arrived at the new unit, he was greeted by Defendant Cline who said: "Hello there, Lieutenant Chrisman says to welcome you, that you like to write the Warden and complain, you know what happens to w[h]iners." (*Id*.) After Plaintiff had unpacked, Defendant Cline, "with a smirk on his face," made him pack up again to bring his duffle bag to the officer station. (*Id*.)

On January 24, 2016, Plaintiff says he wrote the warden again to complain about the actions of Defendants Cline, Jennet, and Chrisman.[1] (*Id*.) Two days later, Plaintiff claims he had a verbal exchange with Defendant Jennet. (*Id*., PageID.4-5.) Jennet informed Plaintiff that Jennet did not like whiners. (*Id*.) Jennet shook Plaintiff down. (*Id*.) In the process of the shakedown, Plaintiff claims that Jennet twice went into a karate guard stance and ultimately "pressed into Plaintiff's back, causing Plaintiff to turn partially around with force." (*Id*., PageID.5.)

Plaintiff next complains that Defendant Chrisman, on March 28, 2016, wrote a "notice of intent" to conduct an administrative hearing to remove funds from Plaintiff's prison account because the money, according to Chrisman, was sent by a fictitious and unidentified person. (*Id*.) On March 29, Defendant Chrisman reviewed the notice with Plaintiff. (*Id*.) Plaintiff signed the "notice of intent" specifically requesting a hearing. (*Id*.) Upon his return to the unit, Plaintiff informed Defendant Cline of the upcoming hearing. (*Id*., PageID.5-6.)

---

[1] Plaintiff does not identify the subject of his January 24 complaint against Defendant Jennet. There are no allegations in Plaintiff's complaint regarding Jennet that predate the January 24 communication.

On March 30, Defendant Jennet handed Plaintiff a folded paper. (*Id.*, PageID.6.) It was an administrative hearing report prepared by Defendant Cline regarding the removal of funds. (*Id.*) Although Plaintiff acknowledges he is (or was)[2] in possession of a "notice of intent" where "I waive 24 hour notification of hearing requirements" is checked, he claims the waiver is a forgery. (*Id.*) On March 31, Plaintiff was woken at 2:00 a.m., handcuffed, and brought to the front of the prison to facilitate his transfer to Kinross. (*Id.*, PageID.6.) Plaintiff was forced to wait more than three hours before his departure. (*Id.*) While he waited, Defendant Chrisman stopped by and asked Plaintiff "how do you like those apples." (*Id.*, PageID.6-7.) Plaintiff left the facility at 5:30 a.m. (*Id.*) Two days later, Plaintiff received his property. (*Id.*, PageID.7.) Several items were missing. (*Id.*)

Plaintiff complains that Defendant Jennet violated Plaintiff's right to be free from cruel and unusual punishment when Jennet: (1) called Plaintiff a complainer and whiner; (2) physically assaulted Plaintiff with karate moves; and (3) conspired with the other Defendants to deter Plaintiff from the exercise of a protected interest. (*Id.*, PageID.8.) Plaintiff complains that all three Defendants violated Plaintiff's right to be free from cruel and unusual punishment when they conspired to take Plaintiff's funds and destroy his personal and legal property. (*Id.*)

Plaintiff claims it was "Retaliation" for the Defendants to conspire to take Plaintiff's funds, assault Plaintiff, destroy Plaintiff's personal and legal property, and transfer Plaintiff. (*Id.*)

Plaintiff claims Defendant Chrisman violated Plaintiff's due process rights when Chrisman wrote a "notice of intent" and then also reviewed it with Plaintiff. Plaintiff further claims

---

[2]Plaintiff alleges that the "notice of intent" written by Defendant Chrisman was removed from his belongings when he was transferred to Kinross. (*Id.*, PageID.7.)

that it was a violation of Plaintiff's due process rights for Defendant Chrisman and Defendant Cline to forge the "notice of intent" and deny Plaintiff his administrative hearing.³

Plaintiff seeks a declaration that Defendants have violated his rights. (*Id.*, PageID.9.) He seeks compensatory and punitive damages of $300,000.00 from each Defendant. (*Id.*, PageID.10.) He seeks the return of the $1,450.00 taken from his account and the cost of the personal and legal property that was destroyed. (*Id.*)

## Discussion

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

---

³In the prefatory paragraph to Plaintiff's complaint, he also references his intent to raise a state tort claim for intentional infliction of emotional and mental stress, mental anguish and fright. (Id., PageID.1.) Plaintiff makes no further allegations to support such a claim. Accordingly, the Court considers the claim to be abandoned.

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff asserts that his First, Eighth, and Fourteenth Amendment rights have been violated.

II. Conspiracy

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.

*Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving the three Defendants. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by these Defendants in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring over this three month time frame (within Plaintiff's decades of incarceration) were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

III.   Physical assault by Defendant Jennet

Plaintiff accuses Defendant Jennet of calling Plaintiff a complainer and a whiner and physically assaulting Plaintiff in violation of the Eighth Amendment.[4] The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the shakedown must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also*

---

[4]Plaintiff also claims that Defendant Jennet violated Plaintiff's Eighth Amendment rights by participating in the conspiracy to remove funds from Plaintiff's trust account and destroying Plaintiff's property. As set forth above, Plaintiff's conspiracy allegations are insufficient to sustain his claim of an agreement here. Absent the claims of conspiracy, Plaintiff has made no allegation that Defendant Jennet was involved in the removal of funds from Plaintiff's trust account or any destruction of Plaintiff's property.

*Wilkins v. Gaddy*, 559 U.S. 34 (2010). Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs*, 315 F.3d at 556 (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37.

In determining whether the use of force is malicious or sadistic, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff's claim that Defendant Jennet "pressed into Plaintiff's back, causing Plaintiff to turn partially around with force[,]" (Compl., ECF No. 1, PageID.5), is the type of minimal use of force which *Hudson* makes clear does not rise to the level of a constitutional violation. *See De Walt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997);

*Show v. Patterson*, 955 F.Supp. 182, 193 (S.D.N.Y.1997). Although the absence of injury does not foreclose a claim, it is telling here. As the Court noted in *Wilkins*: "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (citing *Hudson*, 503 U.S. at 9).

Defendant Jennet's verbal harassment and threats also fail to rise to the level of an Eighth Amendment violation. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Plaintiff has failed to state an Eighth Amendment claim against Defendant Jennet.

## IV. Due process claim for removing funds from Plaintiff's account

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee, such as Plaintiff alleges here, has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot meet his burden. Plaintiff has not alleged that state post-deprivation remedies are inadequate. The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account. *Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479-80 (money wrongly removed from prison account); *Lillie v. McGraw*, No. 97-3359, 1997 WL 778050, at *1 (6th Cir. Dec. 12, 1997) (officials allegedly broke television); *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993)

(misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Accordingly, Plaintiff has failed to state a claim for violation of his due process rights.

V.     Retaliation

Plaintiff claims that every undesirable thing that happened to him (the unit transfer and resulting loss of his prison job, unnecessarily repacking his belongings, the physical confrontation with Defendant Jennet, the removal of $1,450.00 from his account, the 2:00 a.m "wake up and wait" on the day of his transfer, the prison transfer, and the destruction of his legal and personal property) was in retaliation for his written communications with the warden.[5]  Plaintiff contends the retaliatory actions violated his First Amendment rights.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

---

[5]Petitioner also claims the actions were taken in retaliation for his filing of grievances. Plaintiff filed only one grievance before the alleged retaliatory conduct occurred, a February 26, 2016 grievance against Defendant Jennet for the January 26 physical confrontation. (Compl., ECF No. 1, PageID.7-8.) Plaintiff has failed to identify any retaliatory action by Defendant Jennet subsequent to that grievance.

Plaintiff may have sufficiently alleged protected conduct;[6] but his allegations fall short with regard to the adversity of the action or the retaliatory nature of the underlying motive. Whether alleged retaliatory action is sufficiently adverse to be actionable is an objective inquiry, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). In *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'" *Thaddeus* 175 F.3d at 398-99 (citing *Bart*, 677 F.2d at 625).

Many of the items on Plaintiff's list of adverse actions are too minimal to support a First Amendment retaliation claim. Transferring to a different unit in the same prison, unpacking and repacking Plaintiff's belongings, the *de minimis* physical confrontation with Defendant Jennet, and the early wake up before Plaintiff's transfer would not, objectively, by themselves or in combination, deter a prisoner from submitting an informal complaint to the warden. They are typical incidents of day-to-day prison life.

Although the loss of a prison job or the confiscation of money from a prisoner's account might be sufficiently adverse to chill protected conduct, Plaintiff has failed to connect these consequences to a retaliatory motive on the part of these Defendants. Defendant Chrisman's

---

[6]Whether informal complaints to the warden constitute protected conduct is "far from clearly established." See *Treadwell v. Almy*, No. 1:10-cv-560, 2013 WL 6668680 at *7 (W.D. Mich. Dec. 18, 2013) (report and recommendation adopted as opinion of the Court).

statement that Plaintiff would be taught a lesson did not result from Chrisman's discovery that Plaintiff had sent an informal complaint to the warden, it immediately followed Plaintiff's guilty plea for the Class II misconduct of possessing money from unauthorized sources. Having acknowledged by his plea that he "made trouble," Plaintiff was transferred to a unit for trouble makers. The adverse consequence was proximate in time to his plea, not his informal complaint. Based on the facts alleged by Plaintiff, the transfer to a new unit and resulting loss of a prison job flowed from Plaintiff's misconduct, not Defendant Chrisman's retaliatory motive.[7]

Similarly, with respect to Defendant Cline, Plaintiff's allegations might sufficiently link Defendant Cline's statement "you know what happens to whiners" to Cline's insufficiently adverse requirement that Plaintiff unpack, then inconveniently and immediately repack his belongings for inspection, but it is not temporally proximate to the administrative hearing that resulted in the removal of $1,450.00 from Plaintiff's account.

Defendant Jennet's statement regarding whiners and the insufficiently adverse shake down incident are proximate in time and place, but the allegations do not appear to connect to any protected conduct. Plaintiff never grieved Defendant Jennet until a month later and he fails to identify any misconduct by Jennet that might have been the subject of an earlier informal complaint to the warden.

---

[7]In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined the issue of retaliatory motive on the causation prong was to be analyzed under the standard of *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977), where, if a plaintiff has shown that his protected conduct was a motivating factor, the defendant may show that it would have taken the same action, regardless of the protected activity. *Thomas*, 481 F.3d at 441 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (en banc) (holding that the *Mt. Healthy* standard applies to retaliation claims)). Considered under the *Mt. Healthy* framework, even if Plaintiff were able to show retaliatory motive, he could not avoid the fact that his transfer to a different unit, the confiscation of inappropriately acquired funds, and even transfer to a new prison followed from his guilty plea. No matter what level of retaliation Defendants felt in their hearts, Plaintiff's allegations support the conclusion that the same actions would have been taken without regard to his informal complaints to the warden.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him because he filed a grievance or informal complaint. Accordingly, his speculative allegations fail to state a claim.

Finally, with respect to the adverse consequences of the prison transfer or the destruction of Plaintiff's legal and personal property, Plaintiff fails to connect the adverse action to any of these Defendants. Although he alleges these actions were the result of a conspiracy, those allegations fall short. *See* § II. *infra*. Absent the insufficient conspiracy allegations, Petitioner does not allege that Defendants Chrisman, Cline, or Jennet played any role in his transfer or the destruction of Plaintiff's legal and personal property.

A cursory reading of Plaintiff's complaint indicates that the building blocks of a First Amendment retaliation claim are present. Plaintiff alleges protected conduct, adverse actions, and ambiguous statements with a hint of retaliation. Yet, even with the indulgent scrutiny afforded pro

se pleadings, it is apparent that there is nothing connecting the blocks. The events of which Plaintiff complains can be summarized as follows: Plaintiff received money from an unknown person; when Defendant Chrisman wrote a misconduct ticket for receiving the money, Plaintiff lied about it; Plaintiff ultimately pleaded guilty; Plaintiff was transferred to a different, less-desirable unit; an administrative hearing was held and money removed from Plaintiff's account that had been received from an unknown or fictitious person; and Plaintiff was transferred to a different prison. Although Plaintiff may not like what has happened, he has failed to state a claim for violations of his First Amendment, Eighth Amendment, or Fourteenth Amendment rights.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: April 28, 2017               /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    United States District Judge